**BANK OF NOVA SCOTIA, Plaintiff**

v.

**HOTEL ROYAL DANE, et al., Defendants**

Civil No. 162-1973

District Court of the Virgin Islands

Div. of St. Croix

April 5, 1975

ISHERWOOD, COLIANNI, ALKON & BARNARD, ESQS. (JAMES
H. ISHERWOOD of counsel), Christiansted, St. Croix, V.I.

NICHOLS & SILVERLIGHT, ESQS. (JOHN B. NICHOLS of coun-
sel), Christiansted, St. Croix, V.I.

YOUNG, *District Judge*

## MEMORANDUM OPINION AND ORDER

A hearing was held in this action on February 14, 1975, on plaintiff Bank of Nova Scotia's motion seeking to enforce the judicial sale of the Hotel Royal Dane held on April 9, 1974. The parties are in dispute as to the meaning of the terms under which the auction was held. The terms of sale, which were read by United States Marshal for the Virgin Islands, Alfred E. Francis, prior to opening the bidding were as follows:

### 1.

That certain plot, piece and parcel of land situated in the District of St. Croix, Territory of the Virgin Islands, known and described as follows:

[Description of the property]

is sold in the state and condition it is found at the knock of the hammer and stands for the account and risk of the purchaser in all respects.

### 2.

The purchase sum to be paid to the U.S. Marshal, ten percent (10%) cash or good negotiable check (certified) at the knock of the hammer, and the balance to be rendered to the Marshal within thirty (30) days of the sale, in cash or by certified check.

### 3.

In addition to the bid, the purchaser shall pay the expenses of the sale, an approximate statement of which shall be herewith attached at the time of sale.

### 4.

The starting bid on the plot will be announced before the commencement of the bidding.

### 5.

If the purchaser fails to furnish the required down payment, his bid shall be set aside, and the next highest bidder will be considered and so on, and seen, in all cases reserving the right of indemnity.

## 6.

The plaintiff, by his attorneys and through the U.S. Marshal, reserves the right to postpone the auction if the highest bid is not satisfactory.

## 7.

In the event of non-compliance with these conditions, or any one of them, the seller is entitled to either place the property for sale at public auction within fourteen (14) days notice in the newspaper in this district, in which the purchaser or his sureties would be liable for losses sustained, whereas a surplus from the sale will not concern them, or take legal steps for the enforcement of the purchase sum and expenses, and in the latter case, both the purchaser and his sureties are liable to an action in the District Court for all expenses and costs, including attorneys' fees.

B. Michael Rauh, the high bidder at the auction argues that Condition 5 allows him to withdraw his high bid at any time prior to making the down payment and that the seller's only remedy in that event is to consider the next highest bidder, reserving the right of indemnity. The Bank of Nova Scotia argues that the more general remedies set out in Condition 7, which include specific performance, are also available to a seller in the event the high bidder defaults on any condition of the terms of sale including Condition 2 on making a down payment of ten percent at the knock of the hammer. Whether the seller is limited to the remedies of Condition 5 or can also proceed under Condition 7, Rauh is responsible for any losses caused by his default, since indemnity is reserved in Condition 5 and the defaulting purchaser is liable for losses per Condition 7. The most Rauh will be able to avoid is being forced to take possession of the property. I think Condition 5 has no place in the terms of a judicial sale, but I hold it would be inequitable in this case to order specific performance.

The Bank of Nova Scotia foreclosed its mortgage on the leasehold interest in the property located at 13 Strand

Street, Frederiksted, St. Croix, and on the improvements and personality on that property (which is the Hotel Royal Dane). The bank obtained a judgment of $156,425.95 against defendants Hotel Royal Dane, Inc. and H.R.D., Ltd. B. Michael Rauh and Grover Lawson are sureties for defendants' indebtedness.

The judicial sale of this property was held by United States Marshal, Alfred E. Francis, on April 9, 1974, in the Marshal's Office in Christiansted, St. Croix. Ten persons attended the sale, but only Banco, Inc., and B. Michael Rauh bid after the opening bid of $80,000.00, made by the Bank of Nova Scotia. Rauh was the high bidder at $107,000.00 over Banco, Inc.'s last bid of $106,000.00. Rauh exhibited a certified check payable to the order of the Bank of Nova Scotia in the amount of $16,500.00, to show that he could satisfy the down payment requirement. Rauh stated he would negotiate the check and return with a certified check for $10,700.00 because he only wanted to make the minimum down payment of ten percent as required by Condition 2. Rauh did not do so, rather he informed the Marshal several hours later that he was withdrawing his bid in favor of Banco, Inc.'s second highest bid of $106,000.00, relying upon Condition 5 of the Terms of Sale as justification for not completing the purchase.

This Court entered an order confirming the April 9 sale on July 19, 1974, and plaintiff argues that that order is a ruling on the question of Rauh's right to withdraw; thus establishing the law of the case. While an order confirming sale is normally a ruling on all aspects of a judicial sale, in my order of June 13, 1974, denying plaintiff's motion for an order for specific performance, I ruled that a motion for specific performance is premature prior to confirmation of the sale. Guettel v. Hillebracht, 106 N.E.2d 146, (Ill. App. 1952). I suggested that plaintiff move for an order confirming sale, which barring any other alleged irregularities,

I would grant, reserving the question of the significance of Condition 5. I have not yet ruled on the question whether Condition 5 authorizes the successful bidder to withdraw his bid; that is the central question put by this motion.

It is Rauh's position that Condition 5 authorizes the high bidder to withdraw his bid at his discretion at any time prior to making the down payment. In effect, the knock of the hammer on the high bid is an offer on the part of the seller to sell to the high bidder. The high bidder may accept this offer by providing the ten percent (10%) down payment or may reject the offer. This view is contrary to the general rule that bids at an auction are offers, and the seller accepts the high offer by the knock of the auctioneer's hammer. Basically, Rauh's position makes the auction aspect of the sale meaningless, since the high bidder could avoid his bid at his discretion. If he had an interest in the property, a bidder would be able to bid the property up and yet avoid the consequences of his bidding if his last bid were the highest. This position is hardly fair to the other bidders.

Condition 5 does not provide for withdrawal of bids. Condition 5 states what is to be done in a particular default situation. The purchaser is still in default no matter what action the seller takes. Condition 5 does not relieve Rauh of the consequences of his default; the right of indemnity is specifically reserved. There are two possible measures of this indemnity obligation. Condition 5 states that the high bid is set aside and the next considered and so on. Therefore, the measure of the high bidder's liability might be the difference between the high bid and the next highest. However, the next highest bidder is under no obligation to purchase pursuant to his bid. The knock of the hammer by the Marshal is a rejection of all lower offers and the second highest bidder would also have the right to withdraw his bid pursuant to Condition 5 just as the high bidder did. Condition 5 does not relieve Rauh of the consequences of his

default; the damage consequent to the default is the difference between his bid and the amount for which the property is finally sold. If sold on resale, this measure of damage is spelled out in Condition 7; if a lower bidder takes the property at the first sale, the difference in bids fixes the damage.

Plaintiff argues that Rauh does not come within Condition 5 because he made a tender of the down payment when he exhibited the $16,500.00 certified check to the Marshal. This was not a tender because Rauh did not offer to deliver the $16,500.00 check to the Marshal; instead he stated that he was going to negotiate the check and return with a check for $10,700.00. Rauh never delivered such a check; therefore, he failed to furnish the required down payment.

The provisions of Condition 5 were followed in this case i.e., the next highest bidder (Banco, Inc.) was considered, but it did not want the property for the amount of its last bid. The remedy of the seller provided in Condition 5 did not settle the matter; therefore, the Bank sought specific performance of the high bid as provided in Condition 7. It is difficult to reconcile the language of Conditions 5 and 7. Conditions 5 and 7 can be reconciled in two ways. Condition 7 provides either for specific performance or resale with the right of indemnity reserved in the event of a default and the seller has the option of which remedy to pursue. Condition 5 could be construed to be the exclusive remedy in a sub-class of defaults—defaulted down payments, or it could be construed to require that considerations of other bids be done first but that if that does not settle the issue, the more general remedies of Condition 7 may be pursued. Each construction seems equally likely. The difficulty is caused by inclusion of Condition 5 in the terms of sale; it is clearly inappropriate even were the next high bidder to accept the property. The high bid may have foreclosed many intermediate bids working a severe detriment to the seller.

■■ A motion for an order for specific performance appeals to the discretion of the Court. In this case in which the terms of a contract are unclear such an order would be inappropriate. The Bank's remedy in this case is limited to its right of indemnity against Rauh after another judicial sale of the property is held. The judicial sale must be properly noticed pursuant to 5 V.I.C. § 484 (c) rather than by the more abbreviated notice provision of Condition 7.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED that Plaintiff's motion for an Order for Specific Performance be DENIED.